UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| ARTHUR RAY BOWLING, *et al.*, | : | Case No. 1:91-cv-256 |
| Plaintiffs, | : | Judge Timothy S. Black |
| vs. | : | |
| PFIZER, INC., *et al.*, | : | |
| Defendants. | : | |

**AGREED ORDER**

The Settlement in this case was reached in 1992 and approved by the Honorable S. Arthur Spiegel. (Doc. 250). Since then, the Settlement has been administered by a succession of special master/trustees and others and overseen by the Honorable Herman Weber and by the undersigned. Nancy Lawson, Esq. now serves as Special Master/Trustee of the *Bowling* Settlement Fund. CAC Services Group, LLC (CAC) serves as the Settlement Administrator, carrying out the Special Master/Trustee's court-approved instructions and maintaining an open line of communication for any class members who would like to obtain information about the Settlement or avail themselves of its benefits.

Paul De Marco, Esq. and Terence Coates, Esq. of Markovits, Stock & DeMarco, LLC serve *pro bono* as Class Counsel, and Brian Wolfman, Esq. serves *pro bono* as Special Counsel to Class Counsel. Jack Harrison, Esq. serves as counsel for Pfizer.

On October 29, 2015, the Court entered an agreed order approving an amendment of the Settlement and a second distribution totaling almost $17 million to all then-living

1

implantee class members and their then-living spouses. (Doc. 3138). That agreed order approving the second distribution required a holdback in the agreed amount of $1,619,835.00. (*Id.* at 33). In that agreed order, the Court found that this holdback amount:

> would be more than sufficient to cover the reasonable and foreseeable (a) costs of reimbursing qualified class members' uninsured expenses related to explant surgeries under subsection 5.2.3, including those who qualify under the Supervisory Panel's guidelines and those later diagnosed with single-leg fractures; (b) fees and expenses of the Settlement Administrator; (c) fees and expenses of the Special Master/Trustee; (d) fees for any necessary tax return preparation and accounting and for a biennial review of the remaining funds by a qualified outside accounting firm; (e) costs associated with administering, implementing, and/or enforcing the terms of the Settlement, including any additional expenses of the Supervisory Panel or its members and any further work that the Court might ask of the Panel or any of its members; and (f) fees and expenses related to the distribution. This hold-back will cover the foregoing expenses and any other costs associated with carrying out the purposes of the Settlement Agreement in future years.

(*Id.* at 32-33).

In 2020, by another Agreed Order, the Court ordered a third distribution in light of the advancing age of implantee class members and the availability of relatively up-to-date contact information for them as a result of the second distribution. (Doc. 3187 at 4-7, 9). The approximate amount of $1,300,000.00 was thus made available for the third distribution, divisible in equal shares among all living implantee class members who cashed checks as part of the second distribution. (*Id.* at 9). In the same Agreed Order, the Court ordered that, once the third distribution was completed, the remainder of the

funds in the Settlement Fund would be entrusted to the care and custody of The HealthPath Foundation of Ohio ("HealthPath"), a non-profit foundation in Ohio, by means of the "Custodial Agreement Between HealthPath Foundation of Ohio and the Special Master/Trustee of the *Bowling/Pfizer* Heart Valve Settlement Fund." (*Id.*) This Custodial Agreement was signed in 2022 (Doc. 3188) at which point the remaining settlement funds were transferred to HealthPath. In addition, that Agreed Order stated as follows:

> HealthPath is an affiliate of the Greater Cincinnati Foundation and has resources for and expertise in managing funds and in making grants, particularly in the health care arena. Under the Custodial Agreement, HealthPath would be obligated to manage and, where necessary, pay out funds according to instructions issued by the Court, all within a ten-year timeframe. Within that ten-year window, HealthPath would make use of its internal resources to perform administrative responsibilities previously covered by outside vendors such as tax preparers and accountants; and to the extent given responsibilities cannot be brought in-house at HealthPath, the foundation would use the funds entrusted to it to cover them. At all times within that ten-year window, for example, HealthPath would ensure that CAC is paid for continuing to act as Settlement Administrator. At the end of this ten-year period, HealthPath will distribute the then-remaining funds in the form of grants in support of public health projects and/or research for improving cardiovascular health. The Custodial Agreement provides for such final distributions on "the earlier of (1) the date on which the Court determines and advises HealthPath that sufficient funds exist within the Fund that making such grants from the income thereon will not jeopardize any amount reasonably anticipated to pay claims under sub-paragraph 2(a)(1) above or (2) ten years from [the effective date of the Custodial Agreement]." Exhibit B, p. 2, Sec. 2(b). If the Custodial Agreement is approved, the expectation is that HealthPath, utilizing its expertise in grant making within the health care arena, in the near term would work in collaboration with the Special Master/ Trustee, Class

3

>Counsel, and Special Counsel to formulate a plan for automatically making the grants described above and in the Custodial Agreement at the end of the ten-year period.

(Doc. 3187 at 7-8).

On May 11, 2023, the Court conducted a telephone status conference in this case. Participating were Trustee/Special Master Nancy Lawson, Class Counsel Paul De Marco, Special Counsel Brian Wolfman, Pfizer's counsel Jack Harrison, and Eric DeWald of HealthPath.  Prior to and at the status conference, Mr. DeWald reported his progress in collaborating with the Trustee/Special Master, Class Counsel, and Special Counsel in the development of the contemplated plan for making grants at the end of the ten-year period.

In accordance with the discussion during the status conference, there was concurrence on the following points, and thus the Court orders as follows:

1. At her request, Trustee/Special Master Nancy Lawson shall be relieved of her duties immediately upon the filing of the 2022 tax return for the Settlement Fund. The Court and the parties express their gratitude to Ms. Lawson for her many years of faithful and outstanding service in this case, first as counsel for predecessor Trustee/Special Master James Higgins and then as his successor.

2. In relevant part, Paragraph 5.2.4.1 of the Supplemented Agreement of Compromise and Settlement requires that there be a "Master" designated by the Court to administer class members' claims for expenses related to explant surgery.  Because there have been no such claims since 2010, it is unnecessary at this time for the Court to appoint a replacement for Ms. Lawson.

3. CAC will continue to serve, and HealthPath will continue to pay it to serve, as Settlement Administrator for the purpose of responding to communications from class members, processing any explant claim submitted by any qualified class member, and providing other services relevant to the class or class members. Prior to the end of the 10-year period referred to above, the parties will agree on how future communications with class members or claims by class members, if any, will be handled, and determine proper methods for disposition of the information in CAC's possession.

4. Should any such claim be submitted hereafter by a qualified class member, CAC will process the claim, and HealthPath, which remains subject to the Court's oversight and instructions, will pay it, if the claim is validated by CAC.

5. Should it become necessary to appoint a Special Master in the event such a claim is submitted by a qualified class member, the parties concur that HealthPath, which has possession of the remaining settlement funds, and is and will continue to be subject to the Court's oversight and instructions, could ably fulfill the role of Special Master.

6. The Custodial Agreement executed in 2022 by Ms. Lawson as Trustee/ Special Master and by Mr. DeWald on behalf of HealthPath contemplates that HealthPath will manage the funds until 2032. At that time, HealthPath will use all of the remaining funds in accordance with directions it receives from the Court to make grants that support public health projects and/or research for improving cardiovascular health. In the intervening time, HealthPath is directed to continue to manage the funds in the reasonable manner described by Mr. DeWald, which is calculated to grow them over the ensuing nine years, and to continue to develop the grant-making plan to be executed in 2032. As

discussed during the status conference, in developing and proposing this grant-making plan, HealthPath is to be guided, whenever possible, by the objective to promptly benefit remaining class members, and thus by the need to spend down the remaining funds in 2032, or as soon thereafter as is practicable.

**IT IS SO ORDERED.**

Date:  6/20/2023

Timothy S. Black
United States District Judge

Agreed:

/s/ Nancy Lawson
Special Master/Trustee

/s/ Paul De Marco
Class Counsel

/s/ Brian Wolfman
Special Counsel to Class Counsel

/s/ Jack Harrison
Counsel for Pfizer and Shiley